## JANCIK v. THOMPSON.
### No. 4802.

Court of Civil Appeals of Texas.
El Paso.

June 13, 1951.

Rehearing Denied July 20, 1951.

Magus F. Smith, McAllen, for appellant.

Strickland, Wilkins, Hall & Mills, Mission, for appellee.

SUTTON, Justice.

This appeal is from a judgment of the 92nd District Court of Hidalgo County, entered on an instructed verdict. J. E. Jancik, the surviving partner of the firm of Self & Jancik, sued Guy A. Thompson, Trustee for the St. Louis, Brownsville & Mexico Railway Company, to recover damages alleged to have been sustained to a car of green wrapped tomatoes, consisting of 780 lugs. When plaintiff rested his case the Court sustained a motion made by the defendant to instruct a verdict in his favor and rendered judgment accordingly that plaintiff take nothing.

The sole issue and question is, did the Court err in instructing the verdict? Plaintiff alleged he delivered the produce to the carrier at Pharr, Texas, in good condition on or about November 20, 1943, destined to St. Louis, Mo., which was thereafter, on or about November 23, 1943, diverted to Pittsburgh, Pa., and should have arrived in Pittsburgh for the market of November 26, but did not arrive for such market but instead it was not available for market until November 29, and as a result of the delay in delivery and some sort of negligent handling en route the product was damaged. It is alleged the produce, had it arrived in due time and with proper handling, would have had then and there the market value of $3,120, but as the result of the delay and improper handling the tomatoes were delivered in a decayed, bruised, chilled and failing to ripen condition as the result of which "they were then and there of the value of only $1,390.25" and he had sustained damage in the amount of $1,739.75.

The motion for the instructed verdict was predicated on the sole ground plaintiff had failed to offer anything on the market value of the tomatoes upon their arrival at Pittsburgh on November 26, or at any time thereafter. The facts are the tomatoes were delivered at 11 P.M. November 26 in Pittsburgh, and the consignee, Demase & Mann, notified thereof at 6:35 A.M. Saturday, the 27th. Mr. Demase, a member of the firm, who had engaged in the business of buying and selling produce on the Pittsburgh market for 29 years,

640

testified he examined the tomatoes in question on November 27 and 29 and found them green, chilled, with decay as high as 8%, with about 15% discolored checks on sides and shoulders on account of which he rejected them, as being of no value to his firm because of their condition. He testified further on account of the green and chilled condition of the tomatoes he could not fix their market value, but had they arrived in good sound condition, less the usual wear and tear incident to shipment, they would have had a market value of $4 to $4.50 per lug on the Pittsburgh market on each of the days November 26 through December 3, 1943.

The U. S. Government Department of Agriculture Certificate of Inspection at Pittsburgh dated November 29, 1943, shows among other things, no decay in most samples. "In many decay ranges from 4% to 8%, averaging 3%. Decay is Bacterial Soft Rot in advanced stage. Approximately 75% mature, green, 15% turning and 5% ripe and firm. In addition average 15% of stock shows pitted, discolored bruises on shoulders or sides of tomatoes. Stock now fails to grade U. S. No. 1 only on account of condition factors in excess of the tolerance."

Plaintiff testified he had been in the produce business since 1938, handling mostly tomatoes and vegetables on all the larger markets of the country and handled some 200 to 300 cars annually, and in his experience the condition shown by the U. S. destination report of inspection is unusual and such condition throwing them out of grade has a serious effect on the market condition and the price and rendered them useless.

The defendant admitted the tomatoes should have arrived at Pittsburgh in time for the November 26 market; that one lug of tomatoes was in bad order and three empty.

There is in the record a telegram dated Pittsburgh, November 27, 1943, at 4:15 P.M., addressed to D. F. McBride (no address) reading: "Ans Date AGA95 Too Late To Get Government Inspection Will Get Government Inspection Monday Mean-time Talk To Shipper." Signed: Demasc & Mann. Another telegram dated Pittsburgh November 29, 5:20 P.M. addressed to D. F. McBride reads: "Placed Government Inspection Art 18146 But Unable To Give Full Particulars Until Tomorrow As Inspector Called Out Of Town Before Writing Up Report." Signed Demase & Mann Co. Another telegram dated Pittsburgh November 30, 4:28 P.M. addressed to D. F. McBride reads: "Demase Mann Refuses American 18146 Tomatoes Advise Disposal." Signed: "W. K. Clowes AG PRR".

The record is the consignee of the tomatoes in question could not refuse them until the Government inspection had been had, and plaintiff testified on receipt of that information he tried to handle the tomatoes by seeking sales thereof to other buyers and contacted several but could not get anyone to buy them and finally turned them over to the Steel City Produce Co., Inc., to sell on a commission basis. The record discloses the tomatoes were sold by that company—776 lugs—between December 4 and 21, 1943, at nine (9) separate sales of from 3 to 284 lugs each for a total consideration of $1,390.25. It may here be noted this is the value plaintiff alleged the tomatoes to have in the condition on arrival at Pittsburgh.

Under this record plaintiff says the Trial Court erred in sustaining the motion for the instructed verdict and rendering judgment that he take nothing. The defendant seeks to sustain the judgment on the sole ground the measure of damages is the difference between the market value of the product at the time and place of delivery if delivered in good condition and the market value in the condition actually delivered. There are no questions presented on the appeal on the pleadings or otherwise other than, as is asserted by the defendant, the total failure to prove a market value of the damaged product at any date from and after its delivery in the damaged condition. We have noted the proof heretofore. There were and are no market reports available on damaged products such as here involved.

It is plaintiff's position the record discloses there was no market or market value for the product in its damaged condition and all he was required to do under the circumstances was to use due diligence to minimize his damages by selling for the best price available and under the facts his damage is measured by the difference between the market value of the product if delivered in good condition and the price he actually obtained for it, or the best price obtainable, which he asserts is the price received.

■■■ We think there are issues of fact presented. The testimony of Mr. Demase that he refused the shipment because of their condition; that they had no value to him, and because of the condition he could not fix a market value; that of the plaintiff in their then condition they were useless; that he tried to sell them and could find no one who would buy, and the manner in which the product was ultimately handled, and the fact there were no market reports for such products would justify and support a finding there was no market for the shipment and they had no market value on the arrival nor at any time thereafter. That finding, if had, would relieve plaintiff from proof of market value in the damaged condition, and in such situation authorize proof of "the full actual loss, damage or injury to such property caused by the common carrier" (which is the rule of damages set up by the Interstate Commerce Act, 49 U.S.C.A. § 20, par. 11) by any proper and legal standard applicable to the case.

The evidence relied upon has already been stated. We think the jury might have concluded and found on the record made the tomatoes were sold under the circumstances established by the proof as soon as possible after their arrival and for the best price obtainable, in which circumstances the rule announced in Texas Mexican Ry. Co. v. Slaughter, Tex.Civ. App., 122 S.W.2d 1101 and adhered to in Texas & N. O. R. R. Co. v. Searcy, Tex. Civ.App., 220 S.W.2d 366 (w.d.n.r.e.) would be applicable.

The judgment of the trial court will be reversed and the cause remanded.